IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHI TECHNOLOGIES
INTERNATIONAL, INC.,

    Plaintiff/Counterdefendant,

vs.                                                          Civ. No. 15-467 KG/CG

CHI ENERGY, INC.,

    Defendant/Counterclaimant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Chi Energy, Inc.'s (Chi) Opposed Motion for Reconsideration of Summary-Judgment Rulings (Motion for Reconsideration), filed February 28, 2019. (Doc. 131). Joshi Technologies International, Inc. (Joshi) filed a response on March 14, 2019, and Chi filed a reply on March 27, 2019. (Docs. 134 and 135). Having reviewed the Motion for Reconsideration and the accompanying briefing, the Court grants the Motion for Reconsideration, but denies Chi's request to vacate the Court's decision (Doc. 44) denying Chi's motion for summary judgment (Doc. 32).

*A. Background*

The subject of this lawsuit is Joshi's sale of oil and gas interests to Chi in September 2012 for $11,000.00. (Doc. 5-1). Joshi contends that it sold to Chi its interests in non-Zircon wellbores-only (operated by Chi). On the other hand, Chi contends that Joshi sold all of its interests in leases and wellbores, including non-Zircon wellbores and Zircon wellbores (operated by Mewbourne Oil Company, Inc. (Mewbourne)).

On May 10, 2016, Chi filed a motion for summary judgment. (Doc. 32). After full briefing on the motion for summary judgment, the Court held a hearing on the motion on August

10, 2017. (Doc. 43). At the hearing, the Court determined that the September 10, 2012, Agreement Letter, and the September 17, 2012, Assignment and Bill of Sale, including Exhibit A, (collectively, PSA documents) contain ambiguities as to what interests Joshi sold to Chi, ambiguities a fact finder would have to resolve. *See* (Docs. 5-1 and 5-2). Having found genuine issues of material fact, the Court denied the motion for summary judgment. (Doc. 44).

The Court subsequently appointed a Special Master to report on the pre-September 2012 values of Joshi's interests in wellbores-only and leases. (Docs 95 and 97). On September 28, 2018, the Special Master filed his Report, which the Court adopted. (Docs. 105 and 140).

Relevant to this Motion for Reconsideration, the Special Master noted that "the PSA documents do not specifically speak to the concept of a wellbore-only assignment" and so "there is no contractual guidance on what a wellbore-only assignment means." (Doc. 105) at 2. The Special Master, therefore, decided to use Joshi's definition of "wellbore-only" in valuing wellbores-only.[1] *Id.*

Also, relevant to this Motion for Reconsideration is the Special Master's pre-September 2012 valuation of Joshi's interests in the non-Zircon wellbores-only at $794, and the pre-September 2012 valuation of all of Joshi's interests in wellbores and leases at $85,454.00. *Id.* at 4-5.

In light of the Special Master's Report, Chi moves the Court to (1) reconsider its denial of Chi's motion for summary judgment pursuant to Fed. R. Civ. 54(b); (2) grant Chi summary judgment, including on "claims to which Joshi failed to respond" such as Joshi's fraud in the

---

[1] Joshi's definition of "'wellbore-only' means current producing zone only…." (Doc. 105) at 2.

inducement and breach of contract claims,[2] and Chi's breach of contract and "money had and received" claims; and (3) sustain Chi's objections (Doc. 37) to Joshi's summary judgment evidence. (Doc. 131) at 7. Joshi opposes the Motion for Reconsideration in its entirety.

B. *Rule 54(b) Standard of Review*

Rule 54(b) governs the Court's review of interlocutory orders and provides that such orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The Tenth Circuit looks to Fed. R. Civ. P. 59(e) for guidance in addressing motions to reconsider interlocutory orders. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (stating that in considering Rule 54(b) motion to reconsider, "court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)"). Courts grant Rule 59(e) relief if there is new intervening and controlling law, new evidence not available previously, or if there is a "need to correct clear error or prevent manifest injustice." *Id.* (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Rule 59(e) does not allow a losing party to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012.

---

[2] At the August 10, 2017, motion hearing, Joshi's counsel explained why Joshi did not specifically address its fraud in the inducement and breach of contract claims in the response to the motion for summary judgment. (Doc. 51) at 43-44. Joshi's counsel maintained that Joshi is still pursing those claims. *Id.*

3

*C. Discussion*

   *1. The Issue of Ambiguity*

The Court finds that the Special Master's Report constitutes new evidence not previously available to the parties. Consequently, the Court will consider those portions of the Report cited in the Motion for Reconsideration to revisit the ambiguity issue.

In addition to the argument and evidence Chi already propounded in its motion for summary judgment, Chi argues first that the Special Master's statement that "the PSA documents do not specifically speak to the concept of a wellbore-only assignment" provides evidence "that the Assignment is not ambiguous and cannot be construed as a wellbore-only assignment." *See* (Doc. 105) at 2; (Doc. 131) at 5. Second, Chi argues that the Special Master's pre-September 2012 valuation of $794 for Joshi's interests in the non-Zircon wellbores-only also provides evidence that the Assignment is not ambiguous and not a wellbore-only assignment.

"[W]hether an agreement contains an ambiguity is a matter of law to be decided by the trial court." *Mark V, Inc. v. Mellekas,* 1993-NMSC-001, ¶ 12, 114 N.M. 778. "The standard to be applied in determining whether a contract [term is ambiguous and] is subject to equally logical but conflicting interpretations is the same standard applied in a motion for summary judgment." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 9, 299 P.3d 844 (quoting *Randles v. Hanson,* 2011–NMCA–059, ¶ 26, 150 N.M. 362 (internal citation omitted)). "If … a court determines that the contract is 'reasonably and fairly' open to multiple constructions, then 'an ambiguity exists,' summary judgment should be denied, and the jury should resolve all 'factual issues presented by the ambiguity.'" *Id.* (quoting *Randles*, 2011–NMCA–059 at ¶ 26).

To decide if an ambiguity exists, "courts may consider 'evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and

4

course of performance.'" *Id.* at ¶ 10 (quoting *C.R. Anthony Co. v. Loretto Mall Partners,* 1991-NMSC-070, ¶ 15, 112 N.M. 504). "[I]f the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact-finder...." *Id.* (quoting *Mark V, Inc.,* 1993-NMSC-001 at ¶ 12).

> *a. The Special Master's Statement that "the PSA documents do not specifically speak to the concept of a wellbore-only assignment"*

The Special Master stated that "the PSA documents do not specifically speak to the concept of a wellbore-only assignment" in the context of deciding how to define "wellbore-only" for valuation purposes. Although this statement suggests that Joshi assigned to Chi interests in all of Joshi's wellbores and leases, the Court does not interpret that statement as an opinion by the Special Master regarding what interests Joshi assigned to Chi. The Court recognizes, as the Special Master did, that the PSA documents, in fact, do not specifically state that Joshi assigned to Chi its interests in wellbores-only. The Agreement Letter lists only Joshi's working interests in non-Zircon wellbores and their locations. The Assignment and Bill of Sale, however, refer generally to both wells and leases, stating that Exhibit A describes leases and how they are "limited as to the lands and depths indicated on Exhibit 'A' (collectively the 'Leases')...." (Doc. 5-2) at 1. Indeed, Exhibit A describes leases but also lists non-Zircon wellbores associated with the leases. This lack of specificity in the PSA documents is the central issue in this case. The Special Master's statement that "the PSA documents do not specifically speak to the concept of a wellbore-only assignment" simply acknowledges that lack of specificity. Hence, contrary to Chi's argument, the Special Master's statement about the PSA documents does not show that the PSA documents unambiguously provide that Joshi assigned to Chi its interests in all of its wellbores and leases.

5

> *b. The Special Master's Pre-September 2012 Valuation of Joshi's Interests in the Non-Zircon Wellbores-Only*

Chi notes that the pre-September 2012 valuation of $794 for Joshi's interests in non-Zircon wellbores-only "falls short of $11,000 by nearly twice the factor that [the Special Master's] $85,454 valuation of the leases included in the Assignment would exceed $11,000." (Doc. 131) at 6. Although the $794 valuation for interests in non-Zircon wellbores-only may suggest that the higher purchase price of $11,000 was for interests in all of Joshi's wellbores and leases, the $794 valuation does not, as Joshi correctly asserts, provide *per se* evidence that Joshi intended to sell both wellbore and leasehold interests. Joshi reasonably contends that a "fact-finder could conclude that Chi was motivated to *overpay* for the wellbore interests given its position as operator of the Non-Zircon wells" or Chi simply "incorrectly valued the 'market value' of the wellbore interests as of September 1, 2012." (Doc. 134) at 3-4.

Nonetheless, the Court can conclude from the Special Master's Report that either (1) Chi paid about twice the value of the interests in the non-Zircon wellbores-only to purchase interests in those wellbores-only, or (2) Chi paid $11,000 to purchase leasehold and wellbore interests valued at $85,454, or almost eight times the purchase price. Under either scenario, the parties did not appreciate the true value of the interests at stake on September 1, 2012. These valuation scenarios are susceptible of two conflicting inferences: (1) Joshi made a substantial profit selling its interests in non-Zircon wellbores-only for the possible reasons Joshi describes above, or (2) Chi purchased interests in both wellbores and leases for a bargain price, as Chi advocates.

Aside from the Special Master's Report, other extrinsic evidence demonstrates the ambiguities involved in this case. For example, the Final Settlement Statement directly contradicts Chi's position by specifically stating that the interests sold were "All WI in Chi-operated [or non-Zircon] wells in Eddy and Lea Counties, NM." (Doc. 5-3). Also, as described

above, the Agreement Letter lists only the working interests in non-Zircon wells and their locations without mentioning leases, but the Assignment and Bill of Sale explicitly refers to both leases and wells. Meanwhile, Exhibit A, "Leases," describes leases plus corresponding non-Zircon wellbores. (Docs. 5-1 and 5-2). Additionally, email exchanges written prior to the Assignment refer to Joshi's "wells" and "Chi Energy wells," but not to leases. (Doc. 32-2) at 1 and 3. Moreover, Sharon Hurst, who negotiated the Assignment on behalf of Joshi, and John Qualls, who negotiated the Assignment on behalf of Chi, have provided contradictory evidence as to what they each communicated to each other about what the Assignment involved. *See* (Doc. 32-11) at 6, depo. at 54 (Hurst testifying that she "had said [to Qualls] that we were getting out of all of the Chi-operated wells in New Mexico."); (Doc. 32-1) at ¶ 12 (Qualls attesting that "Hurst called me and said that Joshi wanted to 'get out of New Mexico.'").

Furthermore, for two years after the parties signed the PSA documents and the Final Settlement Statement, Joshi and Chi continued to act as if Joshi still owned its share of the Zircon wellbores. *See* (Doc. 35-5) at 5, depo. at 37 (Qualls testifying that he did not inform Mewbourne of Joshi's assignment of Zircon wellbore interests to Chi because interests were "small."); (Doc. 35-6) (October 15, 2014, email from Mewbourne to Qualls stating that parties continued to pay respective costs for pre-Assignment interests in Zircon "1" wellbore). Not until Chi received a December 4, 2014, Title Opinion from Mewbourne did Chi actively claim an interest in the Zircon wellbores. (Doc. 32-1) at ¶ 21; (Doc. 35-5) at 4, depo. at 36; (Doc. 35) at 5. This "course of performance" conflicts with Chi's claim to all of Joshi's interests, including Zircon wellbores. Chi's two-year lack of interest in Zircon wellbores is especially puzzling

considering Chi drafted the PSA documents to allegedly acquire Zircon wellbores.[3] (Doc. 32-1) at ¶¶ 13 and 18; (Doc. 35-4) at ¶ 24.

The Court concludes that the above extrinsic evidence is either in dispute, turns on witness credibility, or is susceptible of conflicting inferences. Considering that evidence in addition to the Special Master's statement about the PSA documents and his pre-September 2012 valuations, the Court still concludes, as a matter of law, that the PSA documents are "'reasonably and fairly' open to multiple constructions" and thus, are ambiguous. Hence, a fact finder must resolve the ambiguity. Summary judgment, therefore, is inappropriate.

  2. *Joshi's Failure to Respond to Claims and Chi's Objections to Joshi's Exhibits*

Chi generally asserts that the Court should reconsider its failure to (1) grant summary judgment on the claims to which Joshi did not respond, and (2) sustain Chi's objections to Joshi's summary judgment exhibits. Chi does not argue specifically that new intervening and controlling law, new evidence previously unavailable, or a "need to correct clear error or prevent

---

[3] Chi previously argued that the Court cannot consider post-contract or assignment conduct to determine ambiguity, citing *Rummel v. Lexington Ins. Co.*, an insurance contract case. 1997-NMSC-041, ¶ 19, 123 N.M. 752. In *Rummel*, the New Mexico Supreme Court quoted from an insurance contract treatise that "in determining the existence of an ambiguity, the language at issue should be considered not from the viewpoint of a lawyer, or a person with training in the insurance field, but from the standpoint of a reasonably intelligent layman, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and <u>in the light of existing circumstances, prior to and contemporaneous with the making of the policy</u>." *Id.* (quoting 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3D* § 21:14 (1996) (emphasis added)). This language contradicts the holding in *ConocoPhillips Co.* that a court consider "course of performance," presumably occurring post-contract, in determining if an ambiguity exists. 2013-NMSC-009 at ¶ 10. Because courts have applied *Rummel* only in the insurance contract context, the Court is compelled to follow *ConocoPhillips Co.* in this non-insurance case. Accordingly, the Court considers the parties' post-Assignment "course of performance."

manifest injustice" justifies the Court's reconsideration of those matters. With respect to the claims Joshi did not respond to, Chi merely argues that "Chi's initial Motion for Summary Judgment established that there is no genuine issue of material fact precluding judgment in Chi's favor on these claims…." (Doc. 135) at 6. Chi has not convinced the Court that it should reconsider its decisions regarding the claims Joshi did not respond to and Chi's objections to Joshi's summary judgment exhibits.

IT IS ORDERED that

1. Chi's Opposed Motion for Reconsideration of Summary-Judgment Rulings (Doc. 131) is granted; and

2. Chi's request to vacate the Court's decision (Doc. 44) denying Chi's motion for summary judgment (Doc. 32) is denied.

UNITED STATES DISTRICT JUDGE